UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



CASE NO. 07-80002-CV-COHN

Magistrate Judge Snow

REVELEX CORPORATION, a Florida
corporation,

    Plaintiff,

vs.

WORLD TRAVEL HOLDINGS, INC., a Delaware
corporation and NATIONAL LEISURE GROUP, INC.
a Delaware corporation,

    Defendants.
_____/

### ORDER GRANTING MOTION TO COMPEL ARBITRATION
### ORDER DENYING AS MOOT MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss Counts II, III, IV and V of Plaintiff's Complaint and to Stay Count I of Plaintiff's Complaint [DE 25], Plaintiff's Motion to Strike Non-Responsive Portions of Defendants' Reply, or, in the Alternative, to Sur-Reply to those issues [DE 33], and Defendants' Motion to Compel Arbitration [DE 36]. The Court has carefully considered the motions, responses, and replies thereto, and is otherwise fully advised in the premises. The last motion briefed became ripe on April 16, 2007.

I. PROCEDURAL BACKGROUND

Revelex Corporation ("Revelex" or "Plaintiff") filed this diversity action against Defendants World Travel Holdings, Inc. ("WTH") and National Leisure Group ("NLG") for breach of the confidentiality and non-compete provisions of a license agreement between Revelex and WTH, as well as claims for tortious interference under Florida

law against NLG. WTH is a travel distributor selling all types of travel products, and owns 90% of NLG, the largest distributor of cruises in the United States. Revelex is a travel technology company that primarily licenses its proprietary online booking software to travel companies in return for licensing fees. The Complaint seeks injunctive relief against WTH and damages against NLG.

On January 3, 2007, Plaintiff moved for an *ex parte* temporary restraining order and a preliminary injunction against Defendants for violating certain portions of the parties' License Agreement. After motion briefing and an evidentiary hearing, on January 16, 2007, this Court granted in part Plaintiff's motion for preliminary injunction. The Court found a substantial likelihood of Plaintiff's success in showing a breach of the Confidentiality section of the parties' License Agreement. The Court enjoined WTH from sharing information on Plaintiff's software from NLG. Defendants now move to dismiss or stay the claims in Plaintiff's complaint, or compel arbitration of all claims pursuant to the arbitration clause in the License Agreement

## II. FACTUAL BACKGROUND[1]

On October 31, 2005, Plaintiff entered into a License Agreement with WTH to provide Defendant with Plaintiff's proprietary software for travel distribution that enables travel agencies and travel suppliers to sell travel products online. The Agreement contains confidentiality, limited-use, and non-compete provisions, as well as an arbitration provision, with an exception for certain injunctive relief remedies. While

---

[1] For a more complete background, please refer to the Court's Order granting in part the motion for preliminary injunction [DE 24].

2

the Agreement was in force, World Travel acquired National Leisure Group ("NLG") in July, 2006.

According to Revelex's President and founder, David Goodis, and Brad Tolkin, WTH's chief executive officer, the License Agreement is a form of Plaintiff's regular license agreement, with some negotiated changes between Tolkin and Goodis, as well as James Horvath, Chief Technology Officer for Revelex. For example, "Customer" in the opening paragraph of the Agreement, is defined to include all "world-wide subsidiaries" of WTH, "as long as an acquisition is not in competition with Revelex." Plaintiff's Exhibit 1. In Section 4.2, language was added regarding WTH's website, "Cruise411.com." There appears no dispute that the clauses pertaining to arbitration and injunctive relief were part of Plaintiff's regular license agreement.

On July 12, 2006, WTH closed on the acquisition of NLG. After the merger, during September of 2006, WTH embarked on an internal project to integrate WTH's Cruise411 website into NLG. A World Travel website, "Cruise411.com" stopped using Plaintiff's booking engine as required by the Agreement and began using NLG's competing software booking engine. Revelex did not discover this migration away from Travel Negotiator until early December of 2006. On December 28, 2006 and January 2, 2007, Goodis engaged in telephone discussions with Brad Tolkin to determine why WTH was purportedly breaching the Agreement.

This lawsuit was then filed January 3, 2007. Plaintiff contends that WTH and NLG were enhancing the NLG booking engine by accessing Plaintiff's confidential, trade-secret information and then competing against Plaintiff. Plaintiff also accuses

WTH of allowing NLG, a competitor to Plaintiff, access to confidential information in violation of their Agreement. Finally, Plaintiff asserts that Defendants are reverse-engineering Plaintiff's proprietary information in an attempt to gain permanent access to the proprietary information and in violation of their Agreement.

In particular, Plaintiff's Complaint alleges claims against WTH for breach of the confidentiality and non-disclosure provisions of the License Agreement in Count I; for breach of the non-compete provision in Count II; and for breach of the non-duplication and non-reverse engineering provisions in Count III. As mentioned above, Plaintiff only seeks injunctive relief in the three claims against WTH. In Count IV, Plaintiff asserts a tortious interference with advantageous business relationships claim against NLG. In Count V, Plaintiff alleges a claim for tortious interference with a contractual relationship. Plaintiff seeks compensatory damages in both claims against NLG.

## III. DISCUSSION

Defendant initially responded to the Complaint with a motion to dismiss Counts II, III, IV and V, and to stay Count I pending arbitration. After briefing on that motion was complete, Defendant moved to compel arbitration. The Court then directed the parties to complete briefing on the motion to compel arbitration, as the issues raised in the briefing of the motion to dismiss were similar to the issues raised in the motion to compel arbitration.

### A. Arbitration and Injunctive Relief Clauses

Defendants' motion to compel (and prior motion to dismiss) were based upon the arbitration provision in the License Agreement providing for "a complete defense to any

4

suit, action or other proceeding." Plaintiff opposes the motion on the grounds that it only seeks injunctive relief against WTH, and NLG is not a party to the agreement and therefore cannot invoke its provisions.

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While the FAA creates a presumption in favor of arbitrability, the FAA does not "require parties to arbitrate when they have not agreed to do so." Paladino v. Avnet Computer Technologies, 134 F.3d 1054, 1057 (11th Cir. 1998) (quoting American Express Fin. Advisors, Inc. v. Makarewicz, 122 F.3d 936, 940 (11th Cir. 1997); Kemiron Atlantic, Inc. v. Aguakem Intern., Inc., 290 F.3d 1287, 1290 (11th Cir. 2002).[2]

The Court first turns to the plain language of the parties' Agreement regarding the availability of injunctive relief.   Defendants argue that the Dispute Resolution clause in Section 16.5 precludes injunctive relief except for those sections listed in Section 14 of the Agreement.  Section 16.5 states that:

> Other than those matters involving injunctive relief as a remedy, including during a pending arbitration, or any action necessary to enforce the award of the arbitrators, the provisions of this Section 16.5 shall be a complete defense to any suit, action or other proceeding instituted in any court with respect to any dispute, controversy or claim arising out of or related to

---

[2]   The Eleventh Circuit has held that: "Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract *in general.*" Jenkins v. First American Cash Advance of Georgia, LLC, 400 F.3d 868, 881 (11th Cir. 2005). Defendants urge this Court to compel arbitration on this basis alone.

>this Agreement or the creation, validity, interpretation, breach or termination of this Agreement (emphasis in original).

Section 14 states that:

>In the event of any breach of threatened breach of the provisions of <u>Sections 2, 5, 8, 13 and/or 16</u> hereof, each party shall be entitled to a temporary or permanent decree or order restraining and enjoining such breach or potential breach (without any bond or other security being required therefore), it being hereby expressly acknowledged and understood that damages at law shall be inadequate (emphasis in original).

Plaintiff argued in its memorandum filed just after the preliminary injunction proceeding that the injunctive relief provision in Section 14 merely provides those sections of the agreement for which Plaintiff need not show irreparable harm. At that time, Defendants argued that because the "without bond" language is placed in parentheses, this section cannot mean that it merely provides the sections for which irreparable harm need not be proven, but rather it limits injunctive relief to these five sections, period. In the context of the preliminary injunction ruling, the Court concluded that under the Agreement, injunctive relief is only available for a breach or threatened breach of Section 2, 5, 8, 13 and/or 16, and that the Court's finding of Defendants now being in competition with Plaintiff cannot be remedied via a court-imposed preliminary injunction, but such claim must proceed to arbitration.

In the present briefing on the motion to compel, Plaintiff argues that because it is only seeking injunctive relief against WTH, all matters involving injunctive relief are exempted from arbitration by the plain terms of the License Agreement. As described above, the key phrase in Section 16.5 states that: "other than those matters involving

injunctive relief as a remedy." In the preliminary injunction ruling, this Court stated that while this phrase, taken in isolation, does not reference Section 14, Section 14 must inform the Court's interpretation of this phrase in Section 16.5. If Section 16.5 had stated, "In any matter involving injunctive relief as a remedy," rather than its present language, than perhaps the Court would agree with Plaintiff's interpretation. The same analysis applies in the context of the motion to compel arbitration, particularly given the fact that Plaintiff drafted this part of the Agreement. To the extent the scope of Section 16.5 is ambiguous, it should be interpreted against the drafter under Florida law. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla. 1979).

Another reason to accept Defendants' interpretation is the additional phrase "including during a pending Arbitration," which modified "matters involving injunctive relief as a remedy." This phrase indicates that the exclusion from arbitration for matters involving injunctive relief should be interpreted as temporary or preliminary injunctive relief. Otherwise, in the middle of an arbitration concerning damages, a party could file a court action seeking permanent injunctive relief, and if heard by the district court, effectively create issue preclusion in the arbitration if the district court injunctive proceeding went forth instead of the arbitration proceeding.

Plaintiff argues that Defendants' interpretation would effectively strip Plaintiffs of any injunctive remedy except a preliminary injunction remedy as to those sections listed in Section 14, because the Agreement limits the arbitrator to awarding compensatory damages. However, the better interpretation is that the Agreement allows a party to

seek preliminary injunctive relief, then has the parties arbitrate all issues, and then, if necessary upon completion of the arbitration, allows the prevailing party to return to Court to enforce the award of the arbitrators. This interpretation gives full effect to the arbitration provision.

Though Plaintiff's argument that it can split its causes of action between seeking compensatory damages in arbitration and its injunctive remedies in court is plausible, given that its Complaint put Defendants on notice from the outset of this case that it was only seeking injunctive relief against WTH, the Court still concludes that the arbitration clause should be interpreted to preclude or delay such splitting until after an arbitration proceeding is held. In addition to the reasons set forth above, the federal policy favoring arbitration provides an additional basis to interpret the parties' agreement to include arbitration of the present claims against WTH. <u>Volt Information Systems, Inc. v. Board of Trustees of Leland Stanford Junior University</u>, 489 U.S. 468, 476 ("ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.").

### B. Waiver

Plaintiff also argues that Defendants have waived their right to now compel arbitration because Defendants' first moved dismiss the action. The Eleventh Circuit has "established a two-part test. First, we decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and, second, we look to see whether, by doing so, that party has in some way prejudiced the other party." <u>Ivax Corp. v. B. Braun of America, Inc.</u>, 286 F.3d 1309, 1315 -1316 (11th Cir.

2002) (quotations omitted). The Defendants motion to dismiss was based upon the arbitration "defense" in Section 16.5 of the Agreement, and was therefore not inconsistent with their arbitration rights. The Court noted in its prior order that Defendant's assertion of this defense to the motion for preliminary injunction acts as a preliminary decision to invoke the arbitration clause. Moreover, Plaintiff has not at all been prejudiced by the additional briefing of the motion to dismiss. Therefore, the Court concludes that Defendants have not waived their right to compel arbitration.

### C. Non-signatory

The remaining issue is whether non-signatory defendant NLG can compel Plaintiff to arbitration for the tort claims alleged by Plaintiff against NLG. The Eleventh Circuit has discussed exceptions to the requirement that a person seeking to compel arbitration be a signatory to the agreement "when under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." MS Dealer Service Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999), *quoting* Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423, 1432 (M.D. Ala.1997) (citing cases from Fourth and Sixth Circuits in support of proposition). Similarly, when allegations against signatory and nonsignatory defendants consist of interdependent and concerted misconduct, equitable estoppel principles should apply to allow both types of defendants to compel arbitration.

Plaintiff argues that its claims against NLG are independent of its contract with

WTH, and it should not be deprived of a right to litigation such tort claims. However, the Complaint itself links NLG to the alleged Agreement breaches by WTH. See Complaint, §§ 25, 54, 57-59. In this case, WTH acquired NLG, which led directly to the alleged breaches of the agreement by WTH in sharing information with NLG. To allow Plaintiff to proceed with litigation against NLG would thwart the federal policy in favor of arbitration, described above. The fact that Plaintiff's claims against NLG sound in tort, rather than contract, cannot avoid the arbitration provision in this case. Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 758 (11th Cir. 1993). The Court therefore concludes that non-signatory NLG can compel Plaintiff to arbitrate the claims brought in this case.

Even if the Court were to deny NLG's motion to compel arbitration, the Court would certainly stay this litigation. In a situation involving nonsignatory defendants, the Fifth Circuit Court of Appeals reversed denial of a stay, relying upon § 3 of the Federal Arbitration Act (9 U.S.C. § 3) in concluding that "[a] suit against a nonsignatory that is based upon the same operative facts and is inherently inseparable from the claims against a signatory" should be stayed pending completion of the arbitration. Hill v. G E Power Systems, Inc., 282 F.3d 343, 347 (5th Cir. 2002). This Court notes that in Hill, the Fifth Circuit affirmed the denial of a motion to compel arbitration based upon equitable estoppel. 282 F.3d at 349. The Fifth Circuit relied upon a case that remains binding precedent in the Eleventh Circuit. In Sam Reisfeld & Son Import Company v. S.A. Eteco, 530 F.2d 679 (5th Cir. 1976), the former Fifth Circuit also applied the standard of granting a stay when a claim is "based upon the same operative facts and

is inherently inseparable" from claims against non-signatories. 530 F.2d at 681.[3]

### III. CONCLUSION

The Court grants Defendants' motion to compel arbitration. The preliminary injunction remains in effect through the arbitration proceeding. At the end of the arbitration proceeding, either party may move to enforce the arbitration award, in accordance with the License Agreement, the rules of the American Arbitration Association, and governing law.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendants' Motion to Compel Arbitration [DE 36] is hereby **GRANTED**;

2. All other pending motions are hereby **DENIED as moot;**

3. The Clerk may close this case for statistical purposes.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this  /st  day of May, 2007.

_____
JAMES I. COHN
United States District Judge

Copies furnished to:

counsel of record on CM/ECF

---

[3] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

11